# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

FELIZ-ACOSTA et al,

Plaintiffs,

v.

RUSSELL DEL CARIBE INC. et al,

Defendant.

CIVIL NO. 17-2378 (GAG)

## OPINION AND ORDER

Carmen Feliz Acosta, her husband Ricardo Negrón, and their conjugal partnership (collectively, "Plaintiffs") filed suit against Russell del Caribe, Inc. and Fruit of the Loom, Inc. ("Defendants") alleging unlawful discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), sex discrimination in violation of the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), national origin discrimination in violation under Title VII of the Civil Rights Act of 1964, and retaliation. (Docket No. 1). Plaintiffs also filed local state claims arising under Puerto Rico's Act No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §146 et seq. ("Act 100"), Act No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §185a et seq. ("Act 80"), and Article 1802 of the Puerto Rico Civil Code P.R. Laws Ann. tit. 31 §5141.

Pending before the Court are Defendants' Motion for Summary Judgement and Plaintiff's cross-summary judgement. (Docket Nos. 52 and 62). For the reasons discussed below, Defendants' motion for summary judgement is **GRANTED in part and DENIED in part.** Additionally, Plaintiffs' cross summary judgment motion is **GRANTED in part and DENIED in part**.

Civil No. 17-2378 (GAG)

I. **Relevant Factual Background**

Plaintiff, a female over the age of forty, began working for Defendants on January 7, 2003, until April 7, 2017, when she was terminated. (Docket No. 1 at 2). Defendants are engaged in the business of wholesale, distribution, and manufacturing of apparel. During Plaintiff's years working for Defendants, Plaintiff was promoted several times, reaching her highest position as Senior Business Manager in 2013.

A. ADEA

Plaintiff traveled in January 2016 to Defendants' Corporate Headquarters in Bowling Green, Kentucky. At the meeting, Plaintiff was notified of the new In-Charge of Puerto Rico's distribution center, Ms. Méndez. (Docket No. 1 ¶ 12, 13). Plaintiff was subsequently demoted to Finance Manager, position she occupied until her termination on April 7, 2017. (Docket No. 1 at 2). Plaintiff alleges that she was replaced by the younger Ms. Méndez. That same month, Plaintiff claims that the employer promised no additional adverse actions were to be taken regarding Plaintiff's job position. Id. ¶ 14. However, through October 2016 and January 2017, Plaintiff was demoted twice. Id. ¶ 17. At the time of her termination, Plaintiff occupied the Finance Manager position. Id. While Plaintiff alleges that she performed her job satisfactorily, Defendants terminated Plaintiff's employment on April 7, 2017. Id. ¶ 18, 19. At the time of the termination, Plaintiff was 52 years old. Id. ¶ 21. Plaintiff sustains that her former Finance Manager duties were given to a younger person, in willful violation of the ADEA and ACT 100. Id. ¶ 22.

B. Alleged Gender Discrimination

Plaintiff further alleges that Defendants have engaged in gender discrimination by limiting female employees to lower job positions and paying them unequal wages and fewer benefits

**Civil No. 17-2378 (GAG)**

compared to male employees. Id. ¶ 43. The same year, Plaintiff began working for Defendants as a Junior Accountant and Office Manager. Id. ¶ 45. On 2013, Plaintiff was appointed to Senior Business Manager as In-Charge of Puerto Rico's operations and received no additional compensation. Id. ¶ 46, 51. Plaintiff posits that she was paid a lower salary and benefits then male employees holding an equal position. Id. ¶ 47. Plaintiff alleges she requested her salary to be increased to an amount parallel that of the male employees, but Defendants allegedly ignored her request. Id. ¶ 48. Plaintiff raised issues as to her compensation issue with Defendants' headquarters. Id. ¶ 52. She was allegedly promised future reviews, and an adjustment to compensation. Id. ¶ 52. Plaintiff claims she never received such additional compensation. Id. ¶ 53.

In late 2016, Plaintiff additionally claims that discriminatory remarks based upon gender were directed at her. Id. ¶ 60. Allegedly, Ms. Méndez repeatedly claimed she preferred to work with men rather than women as men were "less dramatic." Id.

C. Alleged Discrimination Based on National Origin

Plaintiff also seeks redress for alleged employment discrimination on the basis of national origin at the hands of Defendants. (Docket No. 1 ¶ 65). Plaintiff claims Defendants stated that "Puerto Ricans are pigs" when referring to Puerto Ricans at the job site, thus interfering with Plaintiff's equal employment opportunity because of her race. Id. ¶ 68, 69.

D. Alleged Wrongful Termination

Plaintiff further argues that upon her termination on April 7, 2017 Defendants provided an agreement offering 50% less compensation then that ordered by Act 80. (Docket No. 1 ¶ 76). Plaintiff also avers that the agreement contains no reference to a just cause for termination, thus violating Act 80's requirement for a mandatory compensation for termination without just cause. Id.

3

Civil No. 17-2378 (GAG)

E. Puerto Rico General Tort Statute

Plaintiff sustains that she has suffered mental anguish, damages, loss of income, and value as a direct result of actions taken by Defendants. (Docket No. 1 ¶ 83). Plaintiff further claims she has faced serious and continuing injury, damage to her reputation, and emotional pain and suffering due to Defendants' willful and malicious actions. Id.

II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### III. Discussion

#### A. Title VII National Origin Discrimination

Plaintiff alleges that she suffered national origin discrimination when Ms. Méndez stated that Puerto Ricans were pigs. (Docket No. 62 at 9; 69 at 18). Plaintiff posits that the discriminatory remarks externalized a strong prejudice and bias against Puerto Ricans. (Docket Nos. 62 at 9; 69 at 18). In McDonnel Douglas, the Supreme Court established that the plaintiff carries the initial burden under the statute of establishing a prima facie case of [national origin] discrimination." McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). In an employment termination case, the plaintiff establishes a prima facie case by showing that: (1) the plaintiff is within a protected class; (2) [they] were performing his job at a level that met the employer's legitimate expectations; (3) [they] were nevertheless dismissed; and (4) the employer sought someone of roughly equivalent qualifications to perform substantially the same work after his departure. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). In this case, however, Plaintiff is Dominican and thus, not part of the protected class (Puerto Ricans).

Furthermore, Plaintiff's discrimination claims on basis on National Origin found in her Complaint (Docket No. 1) failed to comply with Iqbal standards. Plaintiff merely presented a

5

**Civil No. 17-2378 (GAG)**

conclusion of law that she was discriminated due to her National Origin yet presented no supporting facts. Plaintiff additionally failed to amend the Complaint to appropriately support such claims. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662 at 678-79 (2009).

Plaintiff fails to present prima facie case of discrimination based on National Origin. As such, the Court **GRANTS** Defendants' motion for summary judgment on the counts based on national origin discrimination.

B. Title VII Gender Discrimination and ADEA Age Discrimination

Plaintiff alleges that she suffered discrimination based on gender and age at the hands of Defendants. For the reasons stated below, the Court holds that Plaintiff cannot prove that Defendants' legitimate reasons for terminating her from the job were pretext for gender and age discrimination.

*1. Burden-Shifting Framework*

Title VII prohibits gender discrimination, while the ADEA applies to age-based discrimination. While Title VII requires proof that gender was a motivating factor for the adverse employment action, the ADEA requires proof that age was the but-for cause. See Gross v. FBL Financial Services, Inc., 557 U.S. 167, 177 (2009). Nevertheless, "[t]he basic substantive provisions of the [ADEA] are identical to Title VII, with the substitution of the word 'age' as the prohibited basis for discrimination in place of 'race, color, religion, sex, or national origin.'" ROTHSTEIN, ET AL., 1 EMPLOYMENT LAW § 2:38 (5th ed.). Not coincidentally, both are decided through the McDonnell Douglas burden-shifting framework. Since the but-for/motivating factor causation

6

difference between Title VII and ADEA is not outcome determinative in this case, the Court will address the ADEA/Title VII claims concurrently.

As to the alleged gender and age-based discrimination, Plaintiff must satisfy the McDonnell Douglas burden-shifting framework. See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). First, the plaintiff must establish a prima facie case, and if Plaintiff does, the burden shifts to the employer to "produce a legitimate, non-discriminatory reason for the termination." Id. (citing Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012)). If the employer meets its burden, "the ball returns to the plaintiff's court, in which she must prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was in fact a pretext for discrimination." Goncalves v. Plymouth County Sheriff's Dep't, 659 F.3d 101, 105 (1st Cir. 2011). At the final stage, the only difference between the ADEA and Title VII tests concerns causation. The ADEA requires "but-for" causation, while Title VII requires proof that sex or national origin were a motivating factor.

*2. Alleged Gender Discrimination*

For diligence, the Court may assume *arguendo* that a plaintiff has satisfied the prima facie case and proceed to the questions of legitimate business reasons and pretext. See Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) ("If we assume, *arguendo,* that the plaintiff established a prima facie case . . . the case boils down to what we have termed the ultimate question: did [plaintiff] present sufficient evidence that [defendant's] stated reason was a pretext for retaliation?").

Defendants articulated a legitimate business reasons for terminating Plaintiff. Defendants argue that Plaintiff's job performance did not meet the Company's legitimate expectations. (Docket No. 53 at 20). The Company asserts it had legitimate non-discriminatory reasons for termination, to wit, Plaintiff's communication problem with Ms. Méndez, the findings and results of the Company's

7

**Civil No. 17-2378 (GAG)**

internal audit of the Puerto Rico operation, the generalized dissatisfaction in the Company with her performance, her poor attitude, lack of cooperation, and reluctance to adapt to her role, and to abide by the Company's revised accounting procedures. Id. Defendants present that results of a 2016 internal audit showed Plaintiff engaged in bad accounting practices and irregularities. (Docket No. 53 at 28). Moreover, Courts have found that stray workplace remarks, as well as statements made either by non-decisionmakers or by decisionmakers not involved in the process [are] normally [] insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002). Thus, the burden shifts back to Plaintiff to show that Defendants' legitimate business reasons were in fact pretext for discrimination.

The Court finds that Plaintiff has not proffered sufficient evidence to create a genuine issue of material fact as to her performance. Instead, Plaintiff has only alluded to her personal views that she met and exceeded the Defendant's expectations and that she was substituted by a younger unidentified male individual. (Docket Nos. 62 at 6, ¶ 5,6; 69 at 16, ¶ 4,5). From the evidence on the record, the Court notes that the "Employee Performance Appraisal & Career Development Form" submitted by Plaintiff does not cover the last seven years and that the 2016 "Employee Self-Summary" consists of a self-made evaluation. (Docket No. 62-10, 12,13,14,15,16). The absence of any facts indicating potential inconsistencies and contradictions does not allow an inference "that the employer did not act for the asserted nondiscriminatory reasons." Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 37 (1st Cir. 2010).

3. *Alleged ADEA discrimination*

A plaintiff must "present [] evidence which, if believed, prove[s] that he was doing his chores proficiently." Pérez v Oriental Bank & Trust, 291 F. Supp. 3d 215, 229 (D.P.R. 2018) (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988)). But "[a] plaintiff is not

8

Civil No. 17-2378 (GAG)

required, at the *prima facie* stage, to disprove the defendant's proffered nondiscriminatory reason for taking an adverse employment action." Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 139 (1st Cir. 2012). As the First Circuit has held, "doing so 'bypass[es] the burden-shifting analysis and deprive[s] the plaintiff of the opportunity to show [such] reason was in actuality a pretext designed to mask discrimination.'" Id. (quoting Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 444 (1st Cir. 2009)). Thus, the First Circuit has found that a plaintiff has met their *prima facie* burden "where, despite employer's challenge of his account regarding the 'adequacy of his job performance,' plaintiff 'adduced a quantum and quantity of evidence of [their] competence . . . sufficient to prevail if a jury believed his version of the facts and disbelieved defendant.'" Id. (citing Herbet v. Mohawk Rubber Co., 872 F.2d 1104, 1112 (1st Cir. 1989)).

Plaintiff presented as evidence her employee performance appraisals covering the years 2009, 2012, 2013, and 2015 to sustain her claim that she exceeded employer's expectations. (Docket No. 62-10, 12,13,14,15,16). Plaintiff also included a performance self-evaluation for the year 2016. As such, the Court holds that Plaintiff met the prima facie test. However, even though Plaintiff proved a prima facie case, Defendants have produced legitimate business reasons to terminate Plaintiff. Defendants audit showed Plaintiff's bad performance in her work responsibilities. (Docket No. 52-5). Additionally, Defendants point to other reasons such as Plaintiff's interpersonal conflict with Ms. Méndez, her poor attitude, lack of cooperation and reluctance to adapt to her role and the company's revised accounting procedures. (Docket No. 52-1, ¶ 71). The legitimate business reasons shift the burden back to Plaintiff to prove the reasons to terminate her were pretextual. The Court finds that Plaintiff has not proffered sufficient evidence that would show an inference of discrimination.

**Civil No. 17-2378 (GAG)**

For the above reasons, Defendants' motion for summary judgment on the counts of discrimination based on gender and age is **GRANTED**.

C. Equal Pay Act

The Equal Pay Act prohibits employers from discriminating, based on sex, "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d). To establish a prima facie case of Equal Pay Violation, a plaintiff must show that the employer paid different wages to specific employees of the opposite sex for substantially equal work. Ingram v. Brink's, Inc., 414 F.3d 222, 232 (1st Cir. 2005) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195, (1974)). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that its wage disparity was justified by one of four affirmative defenses. Id. (citing Corning Glass, 417 U.S. at 196). At this stage, the defendant carries the burden of proof, not just production, for his affirmative defenses. Id. The employer must show that the wage discrepancy resulted from: (1) a seniority system; (2) a merit system; (3) a system measuring earnings by quantity or quality of production; or (4) a differential based on a factor other than sex. Corning Glass, 417 U.S. at 196.

Plaintiff alleges that the General Manager and the Sales and Operations Manager positions were consolidated under the Senior Business Manager and Operations position created in 2013, which was assigned to her as a result of the company's reorganization. (Docket No. 69 at 22 ¶ 3). From an email exchange between the company's Human Resources heads, a jury could conclude that Plaintiff was in charge of the duties previously taken by the General Manager and the Sales and Operations Manager. (Docket No. 62-5). On the other hand, Defendants argue that Plaintiff did not perform substantially equal work as to the terminated General Manager and Sales and Operations

10

Manager. (Docket 53 at 12). Defendants described that the General Manager oversaw the day-to-day operations and activities for all the brands under the Fruit of the Loom umbrella in the Caribbean and was responsible for forecasting the sales and the financial aspect of Puerto Rico operations. Id. On the other hand, the Sales and Operations Manager was responsible for the day-to-day management of the Puerto Rico distribution center and its related operations along with the supervision of customer service, sales, accounting, and warehouse employees. Id. at 13. Defendants posit that, in contrast, Plaintiff's tasks were related to the financial aspect of the business, including supporting financial, accounting, planning, forecasting, compliance, and reporting of Puerto Rico and Caribbean operations. Id. Defendants also posit that the former General Manager and Sales and Operations Manager had a "clear seniority and experience" difference compared to Plaintiff. (Docket No. 53 at 15). However, the Court reject Defendants' seniority defense, for all three had been in the company for around 11-14 years.

In this case, a jury could find that Plaintiff performed tasks that were previously done by the former male General Manager and Sales and Operations Manager. Accordingly, Defendants' motion for summary judgment on the Equal Pay Act claims is **DENIED**.

   D.  Retaliation

As to the Title VII and ADEA retaliation claims, the Court applies the three-step burden shifting framework articulated in McDonnell Douglas. First, a plaintiff must prove a prima facie case of retaliation "by showing that (1) she engaged in protected conduct, (2) she was subject to an adverse employment action, and (3) a causal connection existed between the first and second elements." Colon v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013). Close temporal proximity between protected conduct and adverse action can establish a causal connection. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). Unlike discrimination claims, both Title VII and ADEA

**Civil No. 17-2378 (GAG)**

retaliation claims require but-for causation. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013).

Once a plaintiff satisfies the elements of the *prima facie* case of retaliation, the burden of production falls on the employer to put forth a legitimate, nondiscriminatory reason for the adverse employment action. Lopez-Mendez v. Lexmark Int'l, Inc., 680 F. Supp. 2d 357, 379 (D.P.R. 2010). The ultimate burden of persuasion, however, remains with the plaintiff, and he or she must show that the employer's nondiscriminatory reason is a pretext for retaliatory discrimination. Id.

Plaintiff alleges that her termination was in retaliation for reporting the discriminatory comments made by Ms. Méndez regarding Puerto Ricans and females at the job site. (Docket No. 69 at 20). Assuming that Plaintiff can make a *prima facie* case for retaliation, as discussed above, she cannot demonstrate that Defendants' nondiscriminatory reason termination was pretext for any unlawful motive. Additionally, Courts have found that in order to establish a causation, the temporal proximity must be very close. Calero-Cerezo v. US Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004). See also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). "Three and four-month periods have been held insufficient to establish a causal connection based on temporal proximity." Calero-Cerezo at 25 (quoting Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) and Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992). For the same reasons that her Title VII discrimination claim fails, Plaintiff's Title VII and ADEA retaliation claims based on the same are **DISMISSED WITH PREJUDICE.**

E. Supplemental Jurisdiction

Plaintiff asserts causes of action under local Law 80 as well as Article 1802 of the Puerto Rico Civil Code.

1. *PR Act 80*

**Civil No. 17-2378 (GAG)**

Plaintiff claims that she is entitled to additional compensation in accordance with Act 80. Act 80 provides a remedy in the event of employee termination without just cause. See Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007); Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling, Co., 152 F.3d 17, 28 (1st Cir. 1998). Under Act 80, once an employee proves that he or she was discharged and alleges that his dismissal was unjustified, his or her employer must establish by a preponderance of the evidence that the discharge was for good cause. Good cause for dismissal is "related to the proper and normal operation of the establishment." Hoyos, 488 F.3d at 6. See also, P.R. LAWS ANN. TIT. 29 § 185b.

Defendants argue that Plaintiff's claim is futile for the following reason. Defendants posit that a dismissal for a first or single offense does not violate Act 80. (Docket No. 53 at 28). In addition, they argue that Plaintiff's termination was necessary for the good of the operation of the enterprise, and therefore, there was a just cause for her termination. Id. Defendants specify that the audit's findings of bad accounting practices and irregularities, along with the communication and personal problems between Plaintiff and her direct supervisor, Méndez, contributed to the decision of terminating Plaintiff. (Docket No. 53 at 28, 29). The Court agrees with Defendants that Plaintiff's claim under Act 80 fails.

*2. Article 1802*

Article 1802 is Puerto Rico's general tort statute, which provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. LAWS ANN. TIT. 31 § 5141. "To the extent labor legislation has created new causes of action to address previously uncovered aspects of employment relationships as in the case of discrimination and *retaliation*, it has been subjected to the same remedial exclusivity principle barring redress under general statutes

13

**Civil No. 17-2378 (GAG)**

such as Article 1802 of the Civil Code." <u>Santana-Colon v. Houghton Mifflin Harcout Pub. Co.</u>, 81 F. Supp. 3d 129, 141 (D.P.R. 2014). Therefore, the remedies under Article 1802 are barred and the Court **GRANTS** summary judgment in Defendants' favor.

IV. **Conclusion**

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** Defendant's motion for summary judgment and **GRANTS in part and DENIES in part** Plaintiff's cross summary judgment motion. Thus, all claims are dismissed excluding Plaintiff's remaining Equal Pay Act claim.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 29th day of August 2019.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge